UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DAMON ANDERSON,<br><br>　　　　Plaintiff,<br><br>　　v.<br><br>T. CISNEROS, et al.,<br><br>　　　　Defendants. | Case No. 1:25-cv-00549-EPG (PC)<br><br>FINDINGS AND RECOMMENDATIONS THAT THIS CASE PROCEED ONLY ON PLAINTIFF'S CLAIMS OF UNREASONABLE SEARCH IN VIOLATION OF THE FOURTH AMENDMENT AGAINST DEFENDANTS C. WILSON, J. CORTEZ, AND LARIOS AND RETALIATION AGAINST DEFENDANT C. WILSON<br><br>(ECF NO. 12)<br><br>OBJECTIONS, IF ANY, DUE WITHIN THIRTY (30) DAYS<br><br>ORDER DIRECTING CLERK OF COURT TO ASSIGN A DISTRICT JUDGE |

Plaintiff Damon Anderson is a state prisoner proceeding *pro se* and *in forma pauperis* in this civil rights action pursuant to 42 U.S.C. § 1983. In his First Amended Complaint, Plaintiff sues five prison officials, alleging that they conducted unreasonable and sexually harassing unclothed body searches, some of which were recorded on officer Body-Worn Cameras ("BWC").

After reviewing the amended complaint, the Court recommends permitting Plaintiff to proceed only on the claims of unreasonable searches in violation of the Fourth Amendment against Defendants C. Wilson, J. Cortez, and Larios and retaliation in violation of the First Amendment against Defendant C. Wilson. The Court will recommend that all other claims and

1

Defendants be dismissed with prejudice and without further leave to amend.

## I.    SCREENING REQUIREMENT

The Court is required to screen complaints brought by prisoners seeking relief against a governmental entity or officer or employee of a governmental entity. 28 U.S.C. § 1915A(a). The Court must dismiss a complaint, or a portion of it, if the prisoner has raised claims that are frivolous or malicious, that fail to state a claim upon which relief may be granted, or that seek monetary relief from a defendant who is immune from such relief. 28 U.S.C. § 1915A(b)(1), (2).

A complaint is required to contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Detailed factual allegations are not required, but "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). A plaintiff must set forth "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Id.* (quoting *Twombly*, 550 U.S. at 570). The mere possibility of misconduct falls short of meeting this plausibility standard. *Id.* at 679. While a plaintiff's allegations are taken as true, courts "are not required to indulge unwarranted inferences." *Doe I v. Wal-Mart Stores, Inc.*, 572 F.3d 677, 681 (9th Cir. 2009) (citation and internal quotation marks omitted). Additionally, a plaintiff's legal conclusions are not accepted as true. *Iqbal*, 556 U.S. at 678.

Pleadings of *pro se* plaintiffs "must be held to less stringent standards than formal pleadings drafted by lawyers." *Hebbe v. Pliler*, 627 F.3d 338, 342 (9th Cir. 2010) (holding that *pro se* complaints should continue to be liberally construed after *Iqbal*).

## II.    FIRST SCREENING ORDER

Plaintiff filed the original complaint in this case on May 8, 2025. (ECF No. 1). The Court screened Plaintiff's initial complaint and determined that he stated only the following claims: unreasonable unclothed body searches in violation of the Fourth Amendment against Defendants Wilson, Cortez, and Larios. (ECF No. 9 at 10). The Court reviewed the legal standards for Plaintiff's claims and noted where he failed to provide sufficient facts to assert such claims. The screening order gave Plaintiff thirty days to notify the Court that he wanted to proceed only on his cognizable claims, file an amended complaint, or notify the Court that he

wanted to stand on his complaint and have it reviewed by a District Judge.

In response, Plaintiff filed an amended complaint on February 20, 2026. (ECF No. 12).

### III.    SUMMARY OF FIRST AMENDED COMPLAINT[1]

Plaintiff states that the events described in his First Amended Complaint occurred at the Substance Abuse Treatment Facility ("SATF") in Corcoran, California. He names the following, as Defendants: (1) T. Cisneros, SATF Warden; (2) C. Wilson, correctional officer; (3) C. Gipson,[2] "SECRETARY CDCR [California Department of Corrections and Rehabilitation]"; (4) J. Cortez, correctional officer; and (6) Larios, correctional officer. (ECF No. 12 at 1-2).

The amended complaint either identifies, or implicates, the following legal claims: (1) unreasonable unclothed body searches and recording of those searches, in violation of the Fourth Amendment; (2) sexual harassment in violation of the Eighth Amendment; (3) retaliation in violation of the First Amendment; and (4) supervisory liability. Specifically, Plaintiff alleges the following:

On or about July 27, 2021, Defendant C. Gipson implemented a policy that required officers at SATF prison to wear BWC (body worn cameras). Defendant Gipson, who was the Director of CDCR was responsible for implementing policies [and] put out a signed memorandum on June 2, 2021, to Defendant Cisneros, who was acting Warden at SATF. This memo provided instruction to ALL defendants, which ultimately was the moving force behind the violation of Plaintiff's constitutional rights.

Defendant Gipson set out guidelines on when and for what reason the officers can deactivate their BWC. None of which were for an unclothed body search of an inmate. Defendant Gipson [stated] "staff who fail to comply with the activation/deactivation policy will be subject to progressive discipline penalties according to the current disciplinary matrix. Applicable categories of the matrix include base penalties up to and including termination.

Defendant Cisneros was responsible for the policies at the local level of SATF prison. When she received the memo from Defendant Gipson, Defendant Cisneros put out the O.P. (operational procedure) 519, which

---

[1] For readability, the Court has made minor alterations to some of Plaintiff's quotations—such as correcting misspellings and altering punctuation—without indicating each change.

[2] Plaintiff identifies the Defendant as both "Gibson" and "Gipson" but Exhibit A to the amended complaint reveals that "Gipson" is the proper spelling and will be used herein.

> mimicked Defendant Gipson's memo. Defendant Cisneros had the opportunity to change the policy before putting out the O.P. signed by her on July 26, 2021.
>
> With the threat of termination that both Defendants Gipson and Cisneros put out to their subordinates, it left Defendant Wilson with no other option than to violate Plaintiff's Fourth Amendment rights or face possible termination.

(*Id.* at 6-7 (capitalization in original)).

Plaintiff receives methadone as a medically-assisted treatment for heroin addiction. (*Id.* at 7). Plaintiff would go through the D Facility work change to move from one part of the facility to another in order to receive treatment Monday through Friday. (*Id.*). Once Plaintiff passed through work change, escorting officers would place him in restraints and take him to "H" clinic and then escort him back to D Facility work change where the restraints were removed. (*Id.*). Plaintiff was always under observation and would walk through the metal detector and back to the yard. (*Id.*).

Before July 27, 2021, Plaintiff was never subjected to an unclothed body search because the department operational manual did not require it. (*Id.*). However, on July 27, 2021, when Plaintiff returned to work change, Defendant Wilson instructed Plaintiff "to strip out" because of BWC policy. (*Id.*). Plaintiff told Defendant Wilson he had to turn off his BWC, but he refused. (*Id.*). Defendant Wilson told Plaintiff: "[T]his is normal; the jails do it, and you don't have any privacy rights." (*Id.*).

Plaintiff and the other inmates "complied with Defendant Wilson's instructions to take off their clothes and spread their cheeks, and squat and cough." (*Id.*). Plaintiff filed a grievance about the violation of his privacy rights. (*Id.* at 8).

From July 27, 2021, through August 19, 2021, "every Monday-Friday Plaintiff was forced to strip down [and] spread his cheeks, all the while objecting to the unreasonable, unjustified, dehumanizing, and embarrassing violation of his Fourth Amendment right." (*Id.*). Defendant Wilson made comments such as "get over it; stop crying; I'm not turning it off." (*Id.*).

On August 19, 2021, a memo and amended operating procedure were circulated to all correctional officers instructing them to deactivate the BWCs prior to conducting unclothed

body searches of inmates. (*Id.*). "After the memo and amended O.P. came out instructing officers to deactivate their BWCs when conducting unclothed body searches of inmates is when the retaliation and sexual harassment began." (*Id.*).

Thereafter, when Plaintiff came back through the work change area, Defendant Wilson would deactivate his BWC and subject Plaintiff "to cruel and unusual punishment by forcing Plaintiff to pull down his pants, spread his cheeks, and show his penis and testicles." (*Id.* at 8). He did not request Plaintiff remove any clothing and "therefore this was not a search at all" but "retaliation against Plaintiff for his filing of 602's [grievances] by sexually harassing him [and] subjecting him to cruel and unusual punishment…in violation of CDCR policy." (*Id.* at 8, 9). Defendant Wilson's behavior "went on day after day, leaving Plaintiff feeling vulnerable, violated, and disgusted." (*Id.* at 8). "Plaintiff filed numerous complaints, had his sister send Defendant Cisneros emails attempting to remedy the situation, [but] [n]othing changed." (*Id.* at 9).

On September 13, 2021, Defendants J. Cortez and Larios were covering the work change area for Defendant Wilson. (*Id.* at 8-9). Defendants Cortez and Larios refused to deactivate their BWCs upon Plaintiff's return to work change and forced Plaintiff to "strip out." (*Id.*). Plaintiff told Cortez and Larios about the August 2021 memo and updated operating procedure instructing them to deactivate their BWCs "but they did not care." (*Id.* at 9). On October 4, 2021, Defendant Cortez was again covering for Defendant Wilson and again "refused to deactivate his BWC prior to Plaintiff being stripped out." (*Id.*).

On November 5, 2021, an inmate asked Wilson, "Why are you always doing this?...Is it because of him?" pointing at the Plaintiff. (*Id.*). "Defendant Wilson said, 'Yes, he wants to do paperwork.'" (*Id.*).

On November 29, 2021, Plaintiff came back through work change with three other inmates. (*Id.*). Wilson waived the three other inmates through without any search, but he stopped Plaintiff and "forced him to show his ass, penis, and testicles." (*Id.* at 10).

"On another occasion, Defendant Wilson forced Plaintiff to do the sexual harassing song and dance outside, in the view of the Central Kitchen and PIA [with] female staff present." (*Id.*).

5

Plaintiff alleges that the "daily sexual harassment and violation of plaintiff's 8th and 4th Amendment rights continued…five days per week for almost 10 months." (*Id.*).

Plaintiff seeks ADR, and if settlement efforts are unsuccessful, then Plaintiff seeks a jury trial with compensatory and punitive damages. (*Id.* at 5). Plaintiff also seeks a "declaratory judgment" and "anything further the Court deems fit." (*Id.*).

## IV. ANALYSIS OF PLAINTIFF'S FIRST AMENDED COMPLAINT

The Civil Rights Act under which this action was filed provides as follows:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress . . . .

42 U.S.C. § 1983. "[Section] 1983 'is not itself a source of substantive rights,' but merely provides 'a method for vindicating federal rights elsewhere conferred.'" *Graham v. Connor*, 490 U.S. 386, 393–94 (1989) (quoting *Baker v. McCollan*, 443 U.S. 137, 144 n.3 (1979)); *see also Chapman v. Houston Welfare Rights Org.*, 441 U.S. 600, 618 (1979); *Hall v. City of Los Angeles*, 697 F.3d 1059, 1068 (9th Cir. 2012); *Crowley v. Nevada*, 678 F.3d 730, 734 (9th Cir. 2012); *Anderson v. Warner*, 451 F.3d 1063, 1067 (9th Cir. 2006).

To state a claim under § 1983, a plaintiff must allege that (1) the defendant acted under color of state law, and (2) the defendant deprived him of rights secured by the Constitution or federal law. *Long v. County of Los Angeles*, 442 F.3d 1178, 1185 (9th Cir. 2006); *see also Marsh v. County of San Diego*, 680 F.3d 1148, 1158 (9th Cir. 2012) (discussing "under color of state law"). A person deprives another of a constitutional right, "within the meaning of § 1983, 'if he does an affirmative act, participates in another's affirmative act, or omits to perform an act which he is legally required to do that causes the deprivation of which complaint is made.'" *Preschooler II v. Clark County Sch. Bd. of Trs.*, 479 F.3d 1175, 1183 (9th Cir. 2007) (quoting *Johnson v. Duffy*, 588 F.2d 740, 743 (9th Cir. 1978)). "The requisite causal connection may be established when an official sets in motion a 'series of acts by others which the actor knows or reasonably should know would cause others to inflict' constitutional harms."

*Preschooler II*, 479 F.3d at 1183 (quoting *Johnson*, 588 F.2d at 743). This standard of causation "closely resembles the standard 'foreseeability' formulation of proximate cause." *Arnold v. Int'l Bus. Mach. Corp.*, 637 F.2d 1350, 1355 (9th Cir. 1981); *see also Harper v. City of Los Angeles*, 533 F.3d 1010, 1026 (9th Cir. 2008).

A plaintiff must demonstrate that each named defendant personally participated in the deprivation of his rights. *Iqbal*, 556 U.S. at 676-77. In other words, there must be an actual connection or link between the actions of the defendants and the deprivation alleged to have been suffered by the plaintiff. *See Monell v. Dep't of Soc. Servs. of City of N.Y.*, 436 U.S. 658, 691, 695 (1978).

### A.    Unclothed Body Searches

The Fourth Amendment guarantees "[t]he right of the people to be secure . . . against unreasonable searches and seizures," U.S. Const. amend. IV, and the Ninth Circuit has "recognized that the Fourth Amendment does apply to the invasion of bodily privacy in prisons." *Bull v. City & Cty. Of San Francisco*, 595 F.3d 964, 974–75 (9th Cir. 2010) (*en banc*) (citing *Michenfelder v. Sumner*, 860 F.2d 328, 332 (9th Cir. 1988)). In *Bell v. Wolfish*, 441 U.S. 520 (1979), the Supreme Court upheld a federal facility's policy of requiring visual body cavity searches of inmates after every contact visit with a person from outside the institution. 441 U.S. at 560. The Supreme Court recognized that the "test of reasonableness under the Fourth Amendment is not capable of precise definition or mechanical application" and in the context of prisons, it requires "[b]alancing the significant and legitimate security interests of the institution against the privacy interests of the inmates." *Id.* at 559-560. In evaluating the reasonableness of a particular search, the Supreme Court instructs that "[c]ourts must consider the scope of the particular intrusion, the manner in which it is conducted, the justification for initiating it, and the place in which it is conducted." *Id.* at 559. Although the visual body cavity searches were upheld in *Bell*, the Supreme Court "obviously recognized that not all strip search procedures will be reasonable; some could be excessive, vindictive, harassing, or unrelated to any legitimate penological interest." *Michenfelder*, 860 F.2d at 332.

The Court recommends finding that Plaintiff's First Amended Complaint sufficiently alleges facts to proceed past screening on a claim for unreasonable unclothed body searches in

violation of the Fourth Amendment against Defendants Wilson, Cortez, and Larios. Taking Plaintiff's allegations as true and liberally construing them in Plaintiff's favor, Plaintiff alleges that, for 10 months, Defendant Wilson was regularly stationed at the Facility D work change area and subjected Plaintiff to unclothed body searches that were often in front of multiple inmates and, many times, recorded on BWC in violation of prison policy. Plaintiff alleges that, even after prison policy required deactivating BWCs for strip searches, Defendants Cortez and Larios knowingly subjected him to BWC-recorded strip searches on September 13, 2021, with Cortez again recording the search on October 4, 2021.

Plaintiff further alleges that, because he was escorted to the clinic and back by officers who observed his behavior at all times, unclothed body searches were unnecessary and contrary to prison policies. Plaintiff alleges that other inmates were not always required to undress and be searched, further demonstrating that Defendants Wilson, Cortez, and Larios subjected him to unnecessary strip searches.

Thus, the Court recommends that Plaintiff's claim for violation of the Fourth Amendment for unreasonable searches against Defendants Wilson, Cortez, and Larios proceed past screening.

### B. Sexual Harassment

Sexual harassment or abuse of an inmate by a prison official is a violation of the Eighth Amendment. *Wood v. Beauclair*, 692 F.3d 1041, 1046, 1051 (9th Cir. 2012) (citing *Schwenk v. Hartford*, 204 F.3d 1187, 1197 (9th Cir. 2000)). In evaluating such a claim, "courts consider whether 'the official act[ed] with a sufficiently culpable state of mind' and if the alleged wrongdoing was objectively 'harmful enough' to establish a constitutional violation." *Wood*, 692 F.3d at 1046 (alteration in original) (quoting *Hudson*, 503 U.S. at 8). Differentiating between claims involving physical contact and those involving verbal abuse, the Ninth Circuit has stated that "the Eighth Amendment's protections do not necessarily extend to mere verbal sexual harassment." *Austin v. Terhune*, 367 F.3d 1167, 1171 (9th Cir. 2004). For example, in *Somers v. Thurman*, 109 F.3d 614 (9th Cir. 1997), the Ninth Circuit found no Eighth Amendment violation when female guards gawked, pointed, and joked as they performed visual body cavity searches and shower viewings of a male inmate. 109 F.3d at 624. The Ninth

Circuit emphasized that the searches and viewings did not involve any physical contact and was "mindful of the realities of prison life . . . 'fully aware that the exchange of verbal insults between inmates and guards is a constant, daily ritual observed in this nation's prisons.'" *Id.* at 622, 624 (quoting *Morgan v. Ward*, 699 F. Supp. 1025, 1055 (N.D.N.Y. 1988)).

The Court recommends finding that Plaintiff's allegations are insufficient to state an Eighth Amendment violation against any defendant. Plaintiff alleges that Defendants Wilson, Cortez, and Larios forced Plaintiff to participate in unclothed body searches that revealed his nude body from the waist down. However, Plaintiff does not allege that the searches themselves were sexual in nature or involved sexual contact. Even taking Plaintiff's allegations as true, he has not alleged that any Defendant acted with a sufficiently culpable state of mind or that the search was objectively harmful enough to establish a constitutional violation.

Thus, the Court will recommend that his Eighth Amendment claim for sexual harassment not proceed past screening.

### C. Retaliation in Violation of the First Amendment

There are five basic elements to a First Amendment retaliation claim: "(1) An assertion that a state actor took some adverse action against an inmate (2) because of (3) that prisoner's protected conduct, and that such action (4) chilled the inmate's exercise of his First Amendment rights, and (5) the action did not reasonably advance a legitimate correctional goal." *Rhodes v. Robinson*, 408 F.3d 559, 567-68 (9th Cir. 2005) (footnote omitted).

Here, Plaintiff alleges that Defendant Wilson retaliated against him by subjecting him and other inmates to unnecessary strip searches even after prison policy required deactivating BWCs. These unclothed body searches were recognized as adverse action by Plaintiff and other inmates who questioned why Defendant Wilson was conducting the strip searches, and Defendant Wilson said because Plaintiff "wants to do paperwork." (ECF No. 12 at 9). Plaintiff further alleges that the searches were not conducted in a thorough manner to identify contraband, and thus, no correctional goal was advanced.

Liberally construing the allegations, the Court recommends allowing Plaintiff's First Amendment Claim for retaliation against Defendant Wilson to proceed past screening.

\\

### D. Supervisory Liability

Supervisory personnel are not liable under section 1983 for the actions of their employees under a theory of *respondeat superior* and, therefore, when a named defendant holds a supervisory position, the causal link between the supervisory defendant and the claimed constitutional violation must be specifically alleged. *Iqbal*, 556 U.S. at 676-77; *Fayle v. Stapley*, 607 F.2d 858, 862 (9th Cir. 1979); *Mosher v. Saalfeld*, 589 F.2d 438, 441 (9th Cir. 1978). To state a claim for relief under section 1983 based on a theory of supervisory liability, a plaintiff must allege some facts that would support a claim that the supervisory defendants either: were personally involved in the alleged deprivation of constitutional rights, *Hansen v. Black*, 885 F.2d 642, 646 (9th Cir. 1989); "knew of the violations and failed to act to prevent them," *Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989); or promulgated or "implement[ed] a policy so deficient that the policy itself is a repudiation of constitutional rights and is the moving force of the constitutional violation," *Hansen*, 885 F.2d at 646 (citations and internal quotation marks omitted). For instance, a supervisor may be liable for his or her "own culpable action or inaction in the training, supervision, or control of his [or her] subordinates," "his [or her] acquiescence in the constitutional deprivations of which the complaint is made," or "conduct that showed a reckless or callous indifference to the rights of others." *Larez v. City of Los Angeles*, 946 F.2d 630, 646 (9th Cir. 1991) (citations, internal quotation marks, and brackets omitted).

Plaintiff's amended complaint alleges that, from July 27, 2021, through August 19, 2021, Defendant Gipson disseminated a policy memo that required correctional officers to keep their body cameras activated without providing an exception for unclothed body searches. Defendant Cisneros claimed, based on Gipson's policy memo, that correctional officers were required to keep their body cameras activated or face discipline.

The Court recommends finding that these allegations do not state a constitutional claim against Defendants Gipson or Cisneros. Plaintiff does not allege that Defendants Gipson or Cisneros intended the policy or procedure to address the use of BWCs during unclothed body searches or otherwise specifically directed anyone to record unclothed searches. Moreover, three weeks after the BWC policy went into effect, a memorandum was circulated that directed

officers to deactivate their BWCs while conducting an unclothed search. (ECF No. at 8). Failing to address the situation of unclothed body searches in the initial policy and procedure was thus not so deficient that the policy itself is a repudiation of constitutional rights under the legal standards set forth above.

The Court thus recommends finding that Plaintiff's allegations are insufficient to state a cognizable claim for supervisory liability.

## V.   CONCLUSION, ORDER, AND RECOMMENDATIONS

The Court has screened the First Amended Complaint and recommends finding that it states a cognizable claim against Defendants Wilson, Cortez, and Larios for unreasonable unclothed body searches in violation of the Fourth Amendment, and a cognizable claim against Defendant Wilson for retaliation in violation of the First Amendment. The Court will recommend that all other claims and Defendants be dismissed with prejudice and without further leave to amend.

Accordingly, IT IS ORDERED as follows:

1.    The Clerk of Court shall assign a District Judge to this case.

Further, IT IS RECOMMENDED as follows:

2.    This case proceed on Plaintiff's First Amended Complaint on the following claim: unreasonable unclothed body searches in violation of the Fourth Amendment against Defendants C. Wilson, J. Cortez, and Larios and retaliation in violation of the First Amendment against Defendant C. Wilson.

3.    All other claims and Defendants be dismissed with prejudice and without further leave to amend.

4.    The Clerk of Court shall revise the caption to reflect that Defendant Wilson is the lead defendant.

These findings and recommendations will be submitted to the United States District Judge assigned to the case, pursuant to the provisions of Title 28 U.S.C. § 636(b)(1). Within thirty (30) days after being served with these findings and recommendations, Plaintiff may file written objections with the Court. The document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." Any objections shall be limited to no more than

11

fifteen (15) pages, including exhibits. Plaintiff is advised that failure to file objections within the specified time may result in the waiver of rights on appeal. *Wilkerson v. Wheeler*, 772 F.3d 834, 838-39 (9th Cir. 2014) (citing *Baxter v. Sullivan*, 923 F.2d 1391, 1394 (9th Cir. 1991)).

IT IS SO ORDERED.

    Dated:    **April 14, 2026**                    /s/ *Erica P. Grosjean*

                                                UNITED STATES MAGISTRATE JUDGE